IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Maritza Dominguez Braswell**

Civil Action No. 22–cv–00591–RM–MDB

JEREMY DEUTO,

Plaintiff,

v.

STATE FARM FIRE AND CASUALTY COMPANY,

Defendant.

---

**ORDER**

---

Plaintiff Jeremy Deuto has filed a Motion to Stay Proceedings and Compel Appraisal ("Motion") (Doc. No. 30), Defendant State Farm Fire and Casualty Company ("State Farm") has filed a response ("Response") (Doc. No. 36), and Plaintiff has replied ("Reply") (Doc. No. 37.) The Court heard oral argument on this Motion on October 11, 2022, and has considered all arguments made for and against the Motion. For the reasons set forth herein, the Court **GRANTS** the Motion.

**BACKGROUND**

On October 10, 2019, Plaintiff's Fort Collins residence sustained fire damage. (Doc. No. 30 at 2.) Plaintiff filed a claim under the policy issued by State Farm, and on or about January 28, 2020, State Farm issued a payment of $174,153.43 in actual cash value ("ACV") benefits. (Doc. No. 36 at 2.) State Farm requested that Plaintiff provide any estimates that might exceed Defendant's estimate and provide "invoices, receipts, or other documentation" to "obtain

replacement cost benefits for this loss[.]" (*Id.* at 2-3.) On May 6, 2020, State Farm received an estimate from Plaintiff's contractor, Structure, Inc. ("Structure"), reflecting a total budget for the project of $341,350. On June 2, 2020, State Farm requested an itemized estimate from Plaintiff. (Doc. No. 36 at 3.) "State Farm informed Plaintiff that the 'lump sum estimate' from the contractor was 'not itemized in enough detail to verify the work being completed.'" (*Id.*) On July 24, 2021, Plaintiff, through his public adjuster, Gary D. Morris and Associates ("Morris"), sent an updated estimate of $420,081.94. (*See* Doc. No. 36-12.) The estimate was a line-item response to State Farm's estimate, with proposed corrections and additions to State Farm's items.

The parties were unable to agree on the amount of covered loss and on August 9, 2021, Morris sent a letter to State Farm, stating, "[u]nder the terms of your policy, Mr. Deuto is hereby invoking the appraisal clause to determine the amount of loss to the dwelling and additional living expenses." (Doc. No. 36-13.) On August 25, 2021, State Farm responded by acknowledging "receipt of the August 9, 2021 demand for appraisal," and concluding that an "appraisal would no longer be appropriate for this claim" because "the differences between the State Farm Estimate and the estimate provided by the public adjuster" were related to scope "rather than price/amount of loss," and "the covered damage [had] been repaired," and "any appraiser and/or umpire who would be estimating the damages and cost of repairs for same would be unable to view the home in its damaged condition." (Doc. No. 36-14.) At that point, a key issue at the center of the dispute concerned Plaintiff's decision to perform not only repairs, but also some remodel work. (*Id.*)

As part of its rejection of the appraisal demand, State Farm cited Sections 2 and 4 of the subject policy. Those clauses read as follows:

2. **Your Duties After Loss.** After a loss to which this insurance may apply, you must cooperate with us in the investigation of the claim and also see that the following duties are performed:

a. give immediate notice to us or our agent and also notify:

*[subsection 2.a.(1)-2.c omitted for brevity]*

d. as often as we reasonably require:
   1) exhibit the damaged property;
   2) provide us with any requested records and documents and allow us to make copies;
   3) while not in the presence of any other insured:
      a) give statements; and
      b) submit to examinations under oath; and
      c) produce employees, members of the insured's household, or others for examination under oath to the extent it is within the ***insured's*** power to do so; and

*[subsection 2.e omitted for brevity]*

**4. Appraisal**. If ***you*** and ***we*** fail to agree on the amount of loss, either party can demand that the amount of the loss be set by appraisal. Only ***you*** or ***we*** may demand appraisal. A demand for appraisal must be in writing. ***You*** must comply with **SECTION I – CONDITIONS**, **Your Duties After Loss** before making a demand for appraisal. At least 10 days before demanding appraisal, the party seeking appraisal must provide the other party with written, itemized documentation of a specific dispute as to the amount of the loss, identifying separately each item being disputed.

a. Each party will select a competent, disinterested appraiser and notify the other party of the appraiser's identity within 20 days of receipt of the written demand for appraisal.

b. The appraisers will then attempt to set the amount of the loss of each item in dispute as specified by each party, and jointly submit to each party a written report of agreement signed by them. In all instances the written report of agreement will be itemized and state separately the ***actual cash value***, replacement cost, and if applicable, the market value of each item in dispute.

The written report of agreement will set the amount of the loss of each item in dispute and will be binding upon ***you*** and ***us***.

c. If the two appraisers fail to agree upon the amount of the loss within 30 days, unless the period of time is extended by mutual agreement, they will select a competent, disinterested umpire and will submit their differences to the umpire. If the appraisers are unable to agree upon an umpire within 15 days:

*[subsection 4.c.(1)-(3) omitted for brevity]*

    d.  To qualify as an appraiser or umpire for a loss to property described in **COVERAGE A DWELLING**, a person must be one of the following and be licensed or certified as required by the applicable jurisdiction:

        *[subsection 4.d.(1)-(3) omitted for brevity]*

    e.  A person may not serve as an appraiser or umpire if that person, any employee of that person, that person's employer, or any employee of their employer:

        *[subsection 4.e.(1)-(2) omitted for brevity]*

    f.  Each party will be responsible for the compensation of their selected appraiser. Reasonable expenses of the appraisal and the reasonable compensation of the umpire will be paid equally by ***you*** and ***us***.

    g.  ***You*** and ***we*** do not waive any rights by demanding or submitting to an appraisal, and retain all contractual rights to determine if coverage applies to each item in dispute.

    h.  Appraisal is only available to determine the amount of the loss of each item in dispute. The appraisers and the umpire have no authority to decide:
        (1) any other questions of fact;
        (2) questions of law;
        (3) questions of coverage;
        (4) other contractual issues; or
        (5) to conduct appraisal on a class-wide basis.

    i.  Appraisal is a non-judicial proceeding and does not provide for or require arbitration. Neither party will be awarded attorney fees. The appraisal award may not be entered as a judgment in a court.

    j.  A party may not demand appraisal after that party brings suit or action against the other party relating to the amount of loss.

(Doc. No. 30-4.)

      On September 13, 2021, Morris responded to State Farm's rejection of the appraisal, stating that if State Farm "continue[s] to deny the insured his right to appraisal, he will be filing a formal complaint with the Division of Insurance and will be forced to litigate." (Doc. No. 30-6.) "In November 2021, State Farm made an additional payment for dwelling benefits in the amount of $36,455.81 based on the re-priced estimate, bringing State Farm's total dwelling payments

[to] $353,663.44." (Doc. No. 36 at 5.) Still, the parties continued to have disagreements, and Plaintiff filed his lawsuit.

In this Motion, filed June 14, 2022, Plaintiff claims "the parties still have significantly different calculations for the amount owed for the loss under the Policy, meaning the claim is still ripe for appraisal." (Doc. No. 30 at 3.) Plaintiff requests an Order compelling Defendant to participate in appraisal and staying the case until the appraisal is concluded. (*Id.*) Plaintiff argues the "appraisal would greatly assist the parties in resolving this case even if it does not directly resolve all outstanding issues." (*Id.*)

Defendant argues against appraisal because: (1) "Plaintiff failed to provide State Farm with requested records and documents and failed to submit sufficient itemized documentation of the alleged 'specific dispute as to the amount of the loss' as required by State Farm's appraisal provision," and (2) the dispute is not "appraisable" because "Plaintiff seeks to have the appraisers establish coverage, as opposed to the cost of repairs or causation." (Doc. No. 36 at 1.) Defendant also cautions that "[a]ppraisal frequently spawns additional litigation over whether the appraisal was conducted in compliance with the policy terms," and that "[e]ven when the appraisal process itself is not being challenged, policyholders frequently attempt to use the appraisal award to springboard a bad faith claim against the insurer by alleging that the amount of the appraisal award should have been the amount paid by the insurer all along." (*Id.* at 7) (internal citations omitted).

**LEGAL STANDARD**

For this analysis, and consistent with the parties' briefing, the Court applies the substantive law of Colorado. *Essex Ins. Co. v. Vincent*, 52 F.3d 894, 896 (10th Cir. 1995). Under

Colorado law, courts "must enforce an insurance policy as written unless the policy language contains an ambiguity." *Cary v. United of Omaha Life Ins. Co.*, 108 P.3d 288, 290 (Colo. 2005). In interpreting the policy, courts "must evaluate the policy as a whole and construe the language in harmony with the plain and generally accepted meaning of the words employed, unless the intent of the parties, as expressed in the contract, indicates that an alternative interpretation is intended." *State Farm Mut. Auto. Ins. Co. v. Stein*, 940 P.2d 384, 387 (Colo. 1997). Additionally, courts in Colorado have applied a presumption in favor of appraisal, resolving doubts about the scope of the appraisal clause in favor of appraisal. *See Church Mut. Ins. Co. v. Rocky Mountain Christian Church*, 2021 WL 1056515, at *2 (D. Colo. Mar. 19, 2021) (hereinafter "*Church Mutual*"); *Garcia v. State Farm Mutual Fire and Casualty Co.*, 2021 WL 4439792, at *2 (D. Colo. Sept. 27, 2021) (hereinafter "*Garcia*"); *Laredo Landing Owners Ass'n, Inc. v. Sequoia Ins. Co.*, 2015 WL 3619205, at *2 (D. Colo. June 10, 2015).

## ANALYSIS

### I. Motion to Compel Appraisal

#### A. The "Appraisability" of this Dispute

State Farm argues that "the disputes [Plaintiff] seeks to appraise are not appraisable," because "Plaintiff chose to have work performed at his home after the fire loss for the purposes of renovation and remodeling." (Doc. No. 36 at 15.) According to State Farm, the "renovation work is not covered under the policy," and "[t]he dispute … [is] due to the scope differences for the remodel, not costing differences for repairs related to the fire." (*Id.*) In other words, State Farm renounces the appraisal mechanism here because—in its view—this dispute concerns

coverage, not cost. *Id*. (citing *Summit Park*, 100 F. Supp. 3d 1099, 1103 (D. Colo. 2015) (finding "appraisers will not be making . . . coverage determinations")).

However, the Tenth Circuit has rejected efforts to "repackage factual-causation issues" into "a legal issue of coverage under the [p]olicy." *Fireman's Fund Ins. Co. v. Steele Street Ltd. II*, 2022 WL 39392, at *7 (10th Cir. 2022) (hereinafter "*Fireman's Fund*"). In *Fireman's Fund*, the parties argued over the flaking on a brick building after a hailstorm. The insurer claimed the hailstorm did not cause direct physical loss under the policy and rejected the claim. *Id.* at *2. The insurer reasoned that, "[a]lthough the hail may have resulted in some flaking of the bricks, it is impossible to identify any particular flaking that was specifically caused by the hail." *Id*. The insured made an appraisal demand, and the insurer denied it, reasoning that "whether the hailstorm's effects on the Building's brick constitute 'direct physical loss or…damage' within the meaning of the Policy," was a question of policy coverage, not causation. *Id.* at *6. The district court rejected the insurer's argument, and the Tenth Circuit affirmed, finding that the insurer was improperly "repackage[ing] factual-causation issues about the hailstorm's effects on the Building's bricks as a legal issue of coverage under the policy." *Id.* at *7.

*Fireman's Fund* is instructive, even if not identical to this case. In *Fireman's Fund*, there were two potential causes of damage to the subject property—a hailstorm and normal exposure. *Id.* at *2. Here, there is only one cause at issue—the fire. Still, like in *Fireman's Fund*, the causation question is complicated by other factors. Plaintiff's decision to remodel during the repair phase has made it difficult to discern which items are connected to the fire and which are not. However, like in *Fireman's Fund*, the dispute concerns one overarching, factual-causation issue, which is the extent of the fire's effects, and relatedly, the cost of remedying those effects.

*Fireman's Fund*, 2022 WL 39392, at *6 (finding that "[b]oiled down to their essence, the questions [the insured] seeks to resolve through the appraisal process raise at least the following overarching, factual-causation issues: whether the hailstorm's effects extend beyond or are distinct from the flaking that ordinarily would be intended or expected from the type of brick found on the Building and, relatedly, what are the costs of remedying those effects"). The dispute is therefore "based not on policy definitions but on a causation analysis." *Id.* at *7. And, as the Tenth Circuit noted in *Fireman's Fund*, an appraisal will only resolve questions of causation and cost, and State Farm "can still exercise its right to deny the claim for a variety of reasons that are not inconsistent with the appraiser's factual findings." *Id.* at *8.[1]

Additionally, to the extent State Farm claims that the repairs and/or remodel work will hinder an appraiser's ability to assess the fire damage or that the coverage dispute will interfere with an appraisal, those arguments are unavailing. First, nothing in the appraisal provision precludes appraisal while a coverage dispute is pending. (*See generally* Doc. No. 30-4); *see also Church Mutual*, 2021 WL 1056515, at *3 (rejecting insurer's argument that appraisal is not appropriate in coverage disputes). The parties can still argue over what items should or should not be covered while an appraiser identifies what was and was not damaged by the fire, and while the appraiser determines the cost associated with the damage. Second, although repairs

[1] State Farm argues that its policy language compels a different result because State Farm did not merely retain the "right to deny the claim," but instead retained "***all contractual rights*** to determine if coverage applies to each item in dispute." (Doc. No. 36 at 14-15 (emphasis in original).) The Court does not agree that this difference compels a different result. As State Farm concedes in its Response, "either party can demand that the amount of loss be set by appraisal," and the phrase "amount of loss" encompasses causation. (*Id.* at 14.) State Farm retains some rights, but by the plain terms of its own provision, those rights concern *coverage*, not causation or amount of loss. Thus, as in *Fireman's Fund*, the appraisal—which will only determine causation and cost—leaves State Farm's coverage determination rights intact.

make it more difficult to determine the amount of loss, they do not make it impossible. *See Church Mutual*, 2021 WL 1056515, at *4 (finding that "while undertaking the appraisal may be more difficult in light of these repairs, it is not impossible, nor is it precluded by the terms of the Policy or the applicable case law"). The parties have "numerous resources at their disposal to conduct an appraisal," (such as photographs, previously prepared estimates and documents, and other information collected before and during repairs), and it is possible to conduct an appraisal even after the damage is no longer present. *Id.* (rejecting the argument that replacement of a roof destroyed evidence and prevented a fair appraisal and relying on the declaration of a certified insurance counselor and risk manager who declared that at least 20% of his appraisals involved properties that had undergone repair *before* the appraisal).

**B. The Pre-Appraisal Demand Conditions**

State Farm argues that Plaintiff failed to satisfy the following pre-appraisal demand contractual obligations set forth in the subject policy: 1) the Section I.2.d.(2) duty to provide "requested records and documents"; and 2) the Section I.4. duty to provide "written, itemized documentation of each specific dispute." (Doc. No. 36 at 10-12), (Doc. No. 30-4.) State Farm seems to argue that Plaintiff's failure to satisfy these conditions rendered Plaintiff's appraisal demand "defective" (*id.* at 13) and therefore not a demand at all. (*Id.* at 4 (stating that "Morris *purported to* demand appraisal").)

As a threshold matter, the Court notes that State Farm's August 25, 2021, rejection of Plaintiff's appraisal request does not treat Plaintiff's request as "defective," nor does it conclude that the appraisal request was not a true demand. To the contrary, State Farm specifically identifies the August 9, 2021, correspondence from Morris as a "demand for appraisal," and

concludes that "appraisal is *no longer appropriate* for the claim …." (Doc. No. 36-14 (emphasis added).) The Court does not consider whether this constitutes a waiver (because that is not at issue here), but it is worth noting that if Plaintiff's appraisal demand was indeed "defective," State Farm might have raised it when it first rejected the demand.[2]

Setting that aside, the Court considers whether Plaintiff did or did not satisfy the pre-appraisal demand conditions. State Farm argues that when it "received Structure's estimate in May 2020, it was nothing but lumpsum trade categories with no breakdown of the work to be performed." (Doc. 36 at 11.) State Farm also argues that "[n]either Plaintiff nor his public adjuster provided the requested information," resulting in "a failure to comply with a post-loss condition." (*Id.*)

Plaintiff, on the other hand, claims that he did provide itemizations and documentation to support his loss and that he satisfied his contractual obligations because, in addition to providing Structure's estimate in May 2020, he provided an Xactimate estimate in July 2020, which "[b]y plain terms…was an itemized document which laid out specific disputes as to the amount of loss, identifying separately each item being disputed." (Doc. No. 37 at 6-7.) Additionally, Plaintiff notes that the Xactimate estimate was a response "to State Farm's own Xactimate estimate of May 31, 2021," and that "[i]f an Xactimate estimate is good enough for the insurer evaluating a claim, it is good enough for the insured." (*Id.* at 6.)

---

[2] During oral argument, counsel for State Farm explained that insurers tend to avoid overly adversarial or confrontational language in the initial stages of reviewing and responding to a claim and that the absence of certain arguments in the August 25, 2021, correspondence might reflect that tendency. However, by August 2021, the parties were already in meaningful disagreement, Plaintiff had already hired a public adjuster, and State Farm set forth other adversarial positions in the very same letter.

State Farm takes issue with the Xactimate estimate, arguing that it is "untethered to what work ***actually occurred*** at the property by Plaintiff's contractor and its sub-contractors [and] is not adequate itemized documentation of any alleged dispute on the amount of loss ***once*** the work and repairs have been done." (Doc. No. 36 at 11 (emphasis in original).) State Farm argues that Plaintiff was required to provide "actual-cost documentation in an itemized format" because the repairs had already been completed, ACV costs were already paid, and "Plaintiff was seeking RCV benefits," requiring him "to set forth what he had actually and necessarily spent for his contractor to perform the repair work." (*Id.* at 13.)

This argument may or may not have some impact on the ultimate coverage determination, but it is not a basis for determining whether the appraisal demand was defective. First, the appraisal provision does not expressly prohibit estimates, nor does it differentiate between the itemizations that must be provided before repairs and itemizations that must be provided after repairs. (*See* Doc. No. 30-4.) Second, the Court has not come across any case that rejects the use of Xactimate estimates to satisfy pre-appraisal demand conditions. Third, courts in this district, analyzing the exact same provision in a State Farm policy, have held that estimates are sufficient to satisfy pre-appraisal demand conditions. *See Garcia*, 2021 WL 4439792, at *5. And finally, because Plaintiff's estimate walked through each of the costs, line by line, adding in specific costs and making Plaintiff's disputes clear (*see* Doc. No. 36-12), the Court finds that Plaintiff's submissions satisfied the requirement under Section I.4. to provide, "written, itemized documentation of a specific dispute" (Doc. 30-4).

The Court also finds that Plaintiff's submission satisfied Section I.2.d.(2) of the policy, which requires that the insured provide all "records and documents" that the insurer "reasonably"

requires. (Doc. No. 30-4.)[3] During oral argument State Farm's counsel argued that even if the Xactimate estimate was sufficient to satisfy the itemization requirement under Section. I.4. of the policy, there is no dispute that Plaintiff failed to provide the documents requested in State Farm's June 2, 2020, correspondence. (Doc. No. 36-5.) Therefore, State Farm argues, Plaintiff did not satisfy its Section I.2.d.(2) duty to provide "requested records and documents." (*See generally* Doc. No. 36 at 10-11.) The Court disagrees. State Farm's June 2, 2020 request was for a "detailed, itemized statement of the work being completed," and while State Farm listed some specific items in that letter, they were items that State Farm indicated Plaintiff "*can* include but [is] not limited to." (*See* Doc. No. 36-5). Plaintiff's Xactimate estimate was responsive because it was delivered in July 2020, and it was an itemized statement of the work.

***

Because Plaintiff satisfied his pre-appraisal demand conditions and properly invoked the appraisal clause before filing suit, and because the dispute is "appraisable," under *Fireman's Fund*, the Court grants Plaintiff's request to compel appraisal.

## II. Stay of Proceedings

---

[3] During oral argument, Plaintiff's counsel argued that there is some ambiguity in Section I.2.d.(2) because it does not define what it means to "reasonably require," and said the Court should construe that provision in Plaintiff's favor. The Court disagrees that the provision is ambiguous. Courts regularly interpret the word "reasonable," and this provision simply calls for an inquiry into whether State Farm's demands were reasonable. However, because the Court has determined that the Xactimate estimate was sufficient under the circumstances, the additional inquiry into the reasonableness of State Farm's demands is not necessary.

Plaintiff also asks the Court to stay the case "until such time as the appraisal process is concluded." (Doc. No. 30 at 3.) Courts in this district consider the following factors in determining whether a stay is appropriate: (1) the plaintiff's interests in proceeding expeditiously; (2) the burden on the defendant; (3) the convenience to the court; (4) the interests of persons that are not parties to the litigation; and (5) the public interest. *See Garcia*, 2021 WL 4439792, at *6 (citing *Springmeadows Condo. Ass'n v. Am. Family Mut. Ins. Co.*, 2014 WL 7005106, at *1 (D. Colo. Dec. 9, 2014) (citing *String Cheese Incident, LLC v. Stylus Shows, Inc.*, No. 05-cv-01934-LTB-KLM, 2006 WL 894955, at *2 (D. Colo. Mar. 30, 2006)).

Here Plaintiff argues "there is no prejudice under the first prong; it is not a burden to hold Defendant to a clause in its own policy under the second prong; it is convenient to the court under the third prong; and the fourth and fifth factors (nonparties and the public) face minimal if any impact." (Doc. No. 30 at 9-10.) The Court agrees. The appraisal mechanism will help resolve key factual issues in dispute and could limit the need for discovery. *See generally See Garcia*, 2021 WL 4439792. "Moreover, because [the insurer] agreed to the appraisal process in the [p]olicy, the Court does not find the burden on [the insurer] to be significant." *Church Mutual*, 2021 WL 1056515, at *5. And finally, it does not appear that any non-party or public interests will be negatively implicated by a stay. Thus, the Court grants Plaintiff's request to stay the case.

**WHEREFORE**, for the foregoing reasons, this Court **GRANTS** Plaintiff's Motion to Stay Proceedings and Compel Appraisal (Doc. No. 30.) It is further

**ORDERED** that this case be stayed until the appraisal process is completed. It is further

**ORDERED** that the parties shall file a Joint Status Report within ten days of the completion of the appraisal process, if any portion of the case remains, to advise whether deadlines should be amended.

Dated this 14th day of October, 2022.

**BY THE COURT:**

Maritza Dominguez Braswell
United States Magistrate Judge